IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ISMAEL ALVARADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 1-15-CV-151 RP |
| | § | |
| US BANK NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE FOR STRUCTURED ASSET | § | |
| SECURITIES CORPORATION | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2006-BCI, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment, filed July 17, 2015 (Clerk's Dkt. #9); Defendant's Motion for Summary Judgment, filed August 14, 2015 (Clerk's Dkt. #11) and the responsive pleadings thereto.  After reviewing the pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

## I.  BACKGROUND

On January 2, 2015 Plaintiff Ismael Alvarado filed this action in the 335th Judicial District Court of Bastrop County, Texas.  He named as sole defendant US Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BCI ("US Bank").  US Bank removed the action to this court on February 23, 2015.

By way of his original pleading filed in state court, Plaintiff alleges he originally purchased real property located at 315 Mesa Drive, Del Valle, Texas ("the Property") in 2000.  On December 5, 2005, he took out a home equity loan.  He executed a Deed of Trust in the form of a Home Equity Security Instrument to secure payment of that loan.  (Orig. Pet. ¶¶ 6-7).

Plaintiff states, at some point in 2008, his loan was transferred to US Bank.  Plaintiff further states, on March 18, 2008, US Bank obtained an order permitting foreclosure on the Property.

Although Plaintiff was notified that his loan was accelerated and the Property was set for foreclosure on May 5, 2009, no foreclosure occurred on that date.  According to Plaintiff, over the next five years he was repeatedly informed his loan was accelerated and that the Property was set for foreclosure, but no foreclosure occurred.  Finally, on July 1, 2014, a foreclosure sale was conducted.  Plaintiff alleges the sale was void, and that the eviction proceeding commenced to remove him from the Property was abated as a result.  (*Id*. ¶¶ 8-11).

Plaintiff asserts causes of action to quiet title, for trespass to try title, and for a declaration that Defendant's interest in the Property is null and void.  (*Id*. ¶¶ 12-28).

Plaintiff has now filed a motion for partial summary judgment as to his request for declaratory relief.  Defendant has also moved for summary judgment, contending each of Plaintiff's claims fail.  The parties have filed responsive pleadings and the motions are now ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Estate of Smith v. United States,* 391 F.3d

621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### III.  SUMMARY JUDGMENT EVIDENCE

On December 5, 2005, Plaintiff executed a promissory note ("Note") and a Texas Home Equity Security Instrument ("Security Instrument") encumbering real property located at 315 Mesa Drive, Del Valle, Texas ("the Property"). Aegis Funding Corporation is identified as the Lender. (Plf. Mot. Exs. A-B). The Note and Security Instrument were assigned to US Bank on July 30, 2008. Wells Fargo Bank, N.A. ("Wells Fargo) thereafter became the mortgage servicer. (*Id*. Ex C ("1st Decl. of Alvarado") at 1 & attachments; Def. Resp. Ex. A ("Decl. of Mulder") ¶ 5).[1]

Plaintiff admits he fell behind in his loan payments in late 2006. (Decl. of Alvarado at 1). At some point in 2007 or 2008 Plaintiff entered into a loan modification process with Wells Fargo. (1st Decl. of Alvarado at 1-2; Decl. of Mulder ¶ 6). Plaintiff thereafter made sporadic loan payments which were applied to his payments due September 1, 2007 through April 1, 2008. (Decl. of Mulder ¶ 6). Counsel for US Bank sent Plaintiff a notice of default and intent to accelerate the Note on September 2, 2008. (*Id*. at 2). Counsel sent Plaintiff a Notice of Acceleration on October 6, 2008. (Def. Resp. Ex. B ("Decl. of Burns") ¶ 4).

In September 2009, Wells Fargo notified Plaintiff that he was eligible for the Home Affordable Modification Program. Plaintiff was instructed that, to accept the offer and see if he

---

[1]  The documents attached to Defendant's motion and response indicate America's Servicing Company, a division of Wells Fargo, was acting as mortgage servicer.

qualified, he would enter into a Trial Period Plan, make three monthly payments due in October, November and December 2009, and provide a variety of documentation.  (Plf. Resp. Ex. A ("2nd Decl. of Alvarado") at 1 & Ex. A-1).  Plaintiff made the three payments, which were applied to the payments due on his loan in May, June and July 2008.  (Decl. of Mulder ¶ 6).  The Trial Period Plan documents make clear the plan was the first in a two-step process, and was not a modification of Plaintiff's loan.  (2nd Decl. of Alvarado Ex. A-2).

Payment records, and a monthly mortgage statement sent to Plaintiff on or about May 19, 2010, indicate Plaintiff's total payment due on June 1, 2010, including overdue payments, totaled $42,671.58.  (Decl. of Mulder ¶ 6 & Ex. A-2).  On June 16, 2010, Plaintiff was notified his request for a modification had been approved.  (2nd Decl. of Alvarado Ex. A-4).

Plaintiff signed and returned a loan modification agreement to Wells Fargo in July 2010. He was told there was a problem with the agreement so he signed and returned a second agreement in August 2010.  (1st Decl. of Alvarado at 2; Decl. of Mulder ¶ 7 & Ex. A-3).  Plaintiff states he was thereafter told by Wells Fargo that he needed to start the loss mitigation process all over again, and at that point Wells Fargo stopped accepting his payments.  (1st Decl. of Alvarado at 3).

Records from Defendant, and a letter sent to Plaintiff by his mortgage servicer in June 2014, indicate Plaintiff was reviewed for various retention options fourteen times from January 2008 through February 2013.  (1st Decl. of Alvarado Ex. C-7; Decl. of Mulder ¶ 8 & Ex. A-4).  The last payment made by Plaintiff was applied to his July 2008 payment obligation.  (Decl. of Mulder ¶ 8 & Ex. A-4).

By certified mail letter dated August 23, 2012, counsel for US Bank notified Plaintiff of his default on the Note and Security Instrument, and informed him: (1) of the amount needed to cure the default; and (2) that the default must be cured within thirty days to avoid acceleration of their loan.  The letter also informed Plaintiff that failure to cure the default could result in foreclosure on

4

the Property.  (Decl. of Burns ¶ 5 & Ex. B-2).

By letter dated July 15, 2013, counsel for US Bank notified Plaintiff that his loan had been accelerated and all sums under the loan were immediately due and payable.  The attached notice also informed Plaintiff that the Property had been set for foreclosure sale on August 6, 2013.  (*Id*. ¶ 6 & Ex. B-3).  Counsel for US Bank again notified Plaintiff by letter dated December 13, 2013, that his loan had been accelerated and all sums under the loan were immediately due and payable. The attached notice also informed Plaintiff that the Property had been set for foreclosure sale on January 7, 2014.  (*Id*. ¶ 7 & Ex. B-4).

A substitute trustee's deed ("Trustee's Deed") for the Property was filed in county property records on July 8, 2014.  The Trustee's Deed reflects the Property was sold at a foreclosure sale conducted July 1, 2014.  (Def. Resp. Ex. D).

## IV.  ANALYSIS

In moving for summary judgment both Plaintiff and Defendant agree the central issue in this case is whether the applicable statute of limitations prevented and continues to prevent Defendant from exercising its right to foreclose on the Property under the Security Instrument.  The Court will therefore address that issue first.

## A.  Statute of Limitations

Under Texas law, "[a] person must bring suit for the recovery of real property under a lien debt or the foreclosure of a lien debt not later than four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a).  Texas law further provides "[o]n the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void."  *Id*. § 16.035(d).

Plaintiff contends Defendant's right to foreclose accrued in October 2008 when counsel for Defendant notified sent Plaintiff a Notice of Acceleration, informing him the Note was being accelerated.  The parties agree a cause of action for foreclosure accrues "when the holder [of the

debt] actually exercises its option to accelerate," rather than on default of payment obligations. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).   The parties also agree, "[e]ven if the noteholder notifies the borrower of the holder's intent to accelerate, 'the holder can abandon acceleration'" thereafter.   *Rivera v. Bank of Am., N.A.*, 607 F. App'x 358, 360 (5th Cir. 2015) (quoting *Holy Cross*, 44 S.W.3d at 566).   If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration.   *Murphy v. HSBC Bank USA*, __ F. Supp. 3d __, 2015 WL 1392789, at *3 (S.D. Tex. Mar. 25, 2015) *Clawson v. GMAC Mortg., LLC*, 2013 WL 1948128, at *2 (S.D. Tex. May 9, 2013); *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.–Houston [1st Dist.] 2012, no pet.).

Not surprisingly, the parties here disagree whether Defendant effectively abandoned the 2008 acceleration of Plaintiff's debt.   Plaintiff admits he made payments subsequent to the October 2008 acceleration during the 2009 Trial Period Plan.   The Fifth Circuit has recently held that acceptance of payments of less than the full accelerated debt after a notice of acceleration has been sent constitutes abandonment of the acceleration.   *Rivera v. Bank of Am.*, N.A., 607 F. App'x 358, 360-61 (5th Cir. 2015) ("Thus, Bank of America effectively abandoned its prior acceleration in 2004 by accepting payments in 2006").

Plaintiff contends his payments do not constitute abandonment because language in the trial plan agreement states acceptance of any payments during the trial period "will not be deemed a waiver of, the acceleration of the loan or foreclosure action."   (Plf. Resp. Ex. A-2 at 2). Defendant, in turn, correctly points out the trial plan agreement cited by Plaintiff is not signed by any party.   Defendant maintains the language in the agreement, therefore, cannot be enforced against US Bank.

Plaintiff also admits he executed a loan modification agreement in 2010.   He concedes such an agreement would ordinarily constitute abandonment of acceleration.   However, Plaintiff points

to mortgage servicing records and an email from a Wells Fargo analyst regarding his loan which reflect that, although the signed modification documents were received, the modification was never acted upon. (Plf. Mot. Exs. E-3, E-4). Plaintiff contends US Bank's breach estops any reliance on the loan modification agreement as abandonment by Defendant.

Admittedly, the breach by one party of a contract does excuse the failure to perform by the other party. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform"). But, Plaintiff's assertion of a breach of contract by Defendant presupposes the existence of a valid contract. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach). Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 529–30 (Tex. App.–Houston [1st Dist.] 2007, no pet.). The evidence, and Plaintiff's own admission, establish the loan modification was an executed and valid contract. Other district courts have found entry into a loan modification agreement constitutes abandonment of acceleration.[2] *See Guillen v. Countrywide Home Loans, Inc.*, 2015 WL 4393155, at *2 (S.D. Tex. July 15, 2015) (acceleration was abandoned when parties entered into loan modification

---

[2] Plaintiff cites to an opinion of our sister court for the proposition that the key question in whether a loan modification constitutes abandonment is whether the status of the loan changed. In that case, the court addressed whether sending a loan modification package to the borrower without the borrower executing the agreement constituted abandonment. The court found not, stating "absent more, an offer of a loan modification agreement is at most a conditional abandonment: if the borrower does not accept the loan modification, then the status of the loan does not change and the prior acceleration remains intact." *Swoboda v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 104852, *5 (S.D. Tex. Aug. 10, 2015). Plaintiff here admits he signed and returned the loan modification agreement. The decision in *Swoboda* is therefore inapposite.

agreement); *Miceli v. The Bank of New York Mellon*, 2015 WL 4164853, at *5 (W.D. Tex. July 9, 2015) (plaintiffs' execution of loan modification agreement, and payments thereunder, constituted abandonment of prior acceleration). *See also Snowden v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 5123436, at *3 (S.D. Tex. Aug. 31, 2015) (where borrower admits he executed loan modification agreement, whether agreement was enforceable not dispositive of whether agreement constituted abandonment of acceleration).  .

Additionally, an abandonment need not be joint, rather "a lender can unilaterally abandon an acceleration." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 2015 WL 3561333, at *3 (5th Cir. June 9, 2015).  *See also Khan*, 371 S.W.3d at 356 (parties can abandon acceleration and restore the contract to its original terms by agreement or actions).  Defendant cites three actions it took after the 2008 acceleration which it maintains were contrary to, and thus constituted an abandonment of, the acceleration.  The first is the monthly mortgage statement sent to Plaintiff in May 2010 reflecting an amount due of less than the total accelerated sum of the Note.  (Decl. of Mulder ¶ 6 & Ex. A-2).[3]  The second is the notice sent Plaintiff in August 2012 by counsel for US Bank notifying Plaintiff of his default on the Note and Security Instrument, which indicates the amount needed to cure the default was less than the total accelerated sum of the Note.  (Decl. of Burns ¶ 5 & Ex. B-2).  Finally, in 2013, Plaintiff was again notified by counsel for US Bank that his loan had been accelerated and all sums under the loan were immediately due and payable.  (*Id*. ¶¶ 6-7 & Ex. B-3, B-4).

The Fifth Circuit has recently upheld a district court's conclusion that the mortgage servicer, by sending the borrowers monthly account statements, put the borrowers on notice that the lender

---

[3]  Plaintiff argues Defendant is estopped from relying on the May 2010 account statement as evidence of abandonment because it would have been unreasonable for him to rely on that statement "when he was under contract to pay something entirely different."  (Plf. Resp. ¶ 19).  As Defendant points out, Plaintiff cannot both contend the loan modification was not an agreed abandonment of acceleration and that he was contractually bound by it.  Moreover, even if inconsistent with each other, the loan modification and May 2010 account statement are both actions by Defendant evidencing an intent to abandon the 2008 acceleration.

was no longer seeking to collect the full balance of the promissory note.  *Leonard*, 2015 WL 3561333, at *3.  Other courts have similarly concluded the sending of account statements or notices seeking less than full payment of the accelerated note constituted abandonment of acceleration.  *See Cline v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 4041791, at *6 (N.D. Tex. July 2, 2015) (notices listing less than full amount of note as due, and acceptance of trial plan payments, were sufficient to put plaintiffs on notice that lender had abandoned acceleration); *Meachum v. Bank of New York Mellon Trust Co.*, 2015 WL 765982, at *1 (N.D. Tex. Feb. 20, 2015) (concluding lender abandoned acceleration by sending subsequent notice of default letter listing an amount less than full amount of note as due, and by sending subsequent notice of intent to accelerate letter); *Boren v. U.S. Nat'l Bank Ass'n*, 2014 WL 5486100, at *1 (S.D. Tex. Oct. 29, 2014) (concluding magistrate judge did not err in finding lender abandoned initial acceleration when it sent notice of default letters requesting less than full balance and subsequently sent notices of intent to accelerate).

Defendant has presented summary judgment evidence establishing that Plaintiff was sent account statements listing less than the full accelerated debt, as well as notices of default and acceleration, after the October 2008 acceleration.  That evidence, coupled with the evidence establishing Plaintiff entered into a loan modification agreement in 2010, is sufficient to establish the October 2008 acceleration was abandoned.  Accordingly, Plaintiff has failed to show the 2014 foreclosure of the Property was barred by the statute of limitations.

**B.  Plaintiff's Claims**

Plaintiff asserts two causes of action in this action – a suit to quiet title, and a claim of trespass to try title to the Property.  A suit to quiet title "is an equitable action that involves clearing a title of an invalid charge against the title."  *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.–San Antonio 2009, pet denied).  The elements of the cause of action to quiet title are: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and

(3) the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.–Texarkana 1991, writ denied). The plaintiff has the burden of establishing his "superior equity and right to relief," and must prove "right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn v. Love*, 321 S.W.3d 517, 532 (Tex. App.–Houston [1st Dist.] 2009, pet denied). A trespass to try title action is the method for determining title to land and other real property. TEX. PROP. CODE ANN. § 22.001 (Vernon 2000). An action in trespass to try title is a suit to recover the possession of land unlawfully withheld from an owner who has a right of immediate possession. *In re Garza*, 90 F. App'x 730, 732-33 (5th Cir. 2004).

The parties all agree Plaintiff's claims are premised on his contention that the statute of limitations bars Defendant from asserting any rights to the Property. As the Court has rejected that contention, Plaintiff's claims both fail.[4] Accordingly, Defendant is entitled to summary judgment.

## V. CONCLUSION

The Court hereby **DENIES** Plaintiff's Motion for Partial Summary Judgment (Clerk's Dkt. #9); and hereby **GRANTS** Defendant's Motion for Summary Judgment (Clerk's Dkt. #11). Plaintiff Ismael Alvarado's claims against Defendant US Bank National Association, as Trustee for

---

[4] The Court also notes Plaintiff is not entitled to seek equitable relief as he has not tendered the amount due under the Note. Texas courts have made clear that "a necessary prerequisite" to recovery of title in a foreclosure setting "is tender of whatever amount is owed on the note." *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.). *See also Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835–36 (Tex. App.–Fort Worth 1999, pet. denied) ("In order to be entitled to recission, [the plaintiff is] required to actually tender the amounts due."); *Grella v. Berry*, 647 S.W.2d 15, 18 (Tex. App.–Houston [1st Dist.] 1982, no writ) (in suit seeking equitable relief to avoid foreclosure, plaintiffs "must affirmatively demonstrate their ability to pay the full amount due on the note if they are to obtain equity."). This is so because "it is a principle of equity that to obtain equitable relief the applicant must have done equity." *Grella*, 647 S.W.2d at 18. The summary judgment evidence establishes, and Plaintiff does not contest, that he is in default of his payment obligations under the Note. His failure to "do equity" by tendering the amount due on his loan prevents a grant of equitable relief. *See Lambert*, 993 S.W.2d at 835–36 (to get equity, plaintiff "had to do equity").

Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BCI are dismissed with prejudice.

      **SIGNED** on September 23, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE